Yakov PRAGER, Individually and on behalf of all others similarly situated, Plaintiff,

v.

KNIGHT/TRIMARK GROUP, INC. and John Does 1–10, Defendants.

No. 00–2677 DRD.

United States District Court, D. New Jersey.

Oct. 27, 2000.

Gary S. Graifman, Kantrowitz, Goldhammer & Graifman, Montvale, NJ, Jules Brody, Aaron Brody, Stull, Stull & Brody, New York City, for Plaintiff.

Robert J. Del Tufo, Andrew Muscato, Cynthia V. Fitzgerald, Skadden, Arps, Slate, Meagher & Flom, Newark, NJ, for Defendant.

### *OPINION*

DEBEVOISE, Senior District Judge.

This action arises out of allegations that defendant Knight/Trimark Group, Inc. ("Knight"), a "market maker" engaged in the business of executing the purchase and sale of NASDAQ securities for various brokerage houses, improperly used information about retail customers' intent to trade particular securities in order to execute its own trades for its own profit before executing its customers' trades. Plaintiff Yakov Prager asserts five causes of action against Knight, individually and on behalf of all others similarly situated, alleging breach of contract, violation of the implied covenant of good faith, breach of fiduciary duty, unjust enrichment, and violation of New Jersey's Consumer Fraud Act.

Plaintiff alleges that although the Rules of Conduct of the National Association of Securities Dealers ("NASD") require brokers to execute retail customers' trades at the best available market price, without excessive markups, and that market makers execute their customers' trades before their own, Knight traded "in advance of such retail customers," thus giving Knight "an informational advantage amounting to exclusive intelligence on which it can trade for its own profit." (Compl.¶¶ 11–20.) Plaintiff alleges that "[s]uch practice violates the NASDAQ rules of conduct, the implied and express agreements between Plaintiff and the Class of customers and the broker/dealers for whom they act, and the fiduciary obligations of defendant." (Compl.¶ 21.) Plaintiff asserts, *inter alia,* that Knight

concealed, suppressed and omitted the fact that it was executing for Plaintiff and the other class members orders in a manner which caused Plaintiff and the class customers to pay artificially higher prices than they would have otherwise paid. Defendant failed to disclose[ ] this information with the intent that Plaintiff and Class members rely upon such concealment, suppression or omission. (Compl.¶ 44.)

On March 17, 2000, plaintiff filed this action against Knight in the Superior Court of New Jersey, Hudson County, purporting to represent "all retail purchasers and sellers throughout the United States of NASDAQ listed securities whose orders were executed through [Knight], during the period March 3, 1996 through March 3, 2000." (Compl.¶ 3.) On June 2, 2000, defendant filed a notice of removal of this action to federal court pursuant to 15 U.S.C. § 78bb(f)(2) of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") because the case "involves a 'covered security'" under the Act. (Def. Notice of Removal, ¶ 7.)

On July 5, 2000, plaintiff filed a motion to remand the case to state court, arguing that the case is not removable under SLUSA because it does not "involve[ ] a covered security." (Pl.Br. at 3.) Defendant opposes, and simultaneously moves to dismiss the complaint, alleging that the case was properly removed to federal court under SLUSA's removal provision and that the complaint should now be dismissed because plaintiff's claims are preempted by SLUSA.

### Standard for Removal

■ Doubts concerning removability are usually resolved in favor of remanding the case to state court. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 104, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Ortiz v. Sam's Club Membership Warehouse,* 41 F.Supp.2d 545, 546 (D.N.J.1999). The removing party has the burden of establishing that removal is proper. *Steel Valley Auth. v. Union Switch & Signal Div., Am. Standard, Inc.,* 809 F.2d 1006, 1010 (3d Cir.1987).

### Discussion

Enacted in 1998, SLUSA amended the Securities Act of 1934 to preclude a private party from bringing a "covered class action" in federal or state court, based on state law, alleging a "misrepresentation or omission of a material fact" or the use of "any manipulative or deceptive device or contrivance" "in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1).

SLUSA, 15 U.S.C. § 78bb(f)(1) provides as follows:

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—

(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or

(B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

Generally, a "covered class action" involves common questions of law or fact brought on behalf of more than 50 persons or an action brought on behalf of one or more unnamed parties. 15 U.S.C. § 78bb(f)(5)(B). A "covered security" is one that is, *inter alia,* listed or authorized for listing on the New York Stock Exchange, the American Stock Exchange, or the NASDAQ Stock Market. 15 U.S.C. § 78r(b).

■ SLUSA provides for limited exceptions, termed "preserved" actions. 15 U.S.C. § 78bb(f)(3).[1] SLUSA further provides for the removal of covered class actions from state to federal court: "Any covered class action brought in any State court involving a covered security, as set forth in paragraph (1), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to paragraph (1)." 15 U.S.C. § 78bb (f)(2). Thus, because SLUSA provides for removal of "covered class actions" asserting state law claims that satisfy 15 U.S.C. § 78bb(f)(1), if a case is properly removed to federal court under SLUSA, it naturally follows that the case must also be dismissed. *See Burns v. Prudential Securities,* 116 F.Supp.2d 917, 920, n. 1 (N.D.Ohio 2000).

■ Essentially, the removing party must establish that the action is (1) a "covered class action", (2) that is based on state law, (3) alleging a misrepresentation or omission of a material fact or use of any manipulative or deceptive device or contrivance (4) "in connection with" [or "involving," for removal purposes] (5) the purchase or sale of a covered security. *See* 15 U.S.C. § 78bb(f)(1). There are a handful of cases that consider the applicability of SLUSA. *See In re Lutheran Brotherhood*

---

1. Plaintiff does not argue that this is a "preserved" action pursuant to SLUSA.

*Variable Ins. Prod. Co. Sales Practices Litig.,* 105 F.Supp.2d 1037 (D.Minn.2000) (denying motion to remand, finding variable life insurance policies to be "covered" securities); *Burns v. Prudential Sec.,* 116 F.Supp.2d 917 (N.D.Ohio 2000) (granting remand because claims did not satisfy securities fraud scienter requirement and therefore SLUSA did not apply); *Gordon v. Buntrock,* No. 00 CV 303, 2000 WL 556763 (N.D.Ill. April 28, 2000) (remanding to state court because damages related to holding securities, not purchase or sale as required by SLUSA); *Derdiger v. Tallman,* 75 F.Supp.2d 322 (D.De.1999) (remanding "preserved" action to state court); *Hines v. ESC Strategic Funds, Inc.,* No. 3:99–0530, 1999 WL 1705503 (M.D.Tenn. Sept. 17, 1999) (dismissing state law claims pursuant to SLUSA except for state claim not involving purchase or sale of covered security); *Abada v. Charles Schwab & Co.,* 68 F.Supp.2d 1160 (S.D.Ca.1999) (denying motion to remand, finding that defendant need not be an issuer or affiliate thereof for SLUSA to apply); *Lalondriz v. USA Networks, Inc.,* 54 F.Supp.2d 352 (S.D.N.Y.1999) (remanding to state court as a preserved action), *adhered to on reconsideration by* 68 F.Supp.2d 285 (holding remand was appropriate and SLUSA did not apply because there had been no purchase or sale); *Lasley v. New England Variable Life Ins. Co.,* No. C 99–0995, 1999 WL 33104899 (N.D.Cal. May 3, 1999) (denying motion to remand and granting motion to dismiss, finding variable life insurance policies to be "covered" securities).

Plaintiff does not dispute that this is a "covered class action" based on state law claims and that there has been a purchase or sale of a covered security. However, plaintiff does debate SLUSA's applicability in this case by arguing that this is not an action *"involving"* a covered security within the meaning of SLUSA's removal provision. Plaintiff argues that the word "involving" as it is used in the removal provision, 15 U.S.C. § 78bb(f)(2), is undefined and unclear, "providing no indication as to the degree of connection required between a class action and a covered security" and therefore the legislative history must be examined in order to elucidate that provision. (Pl.Br. at 4–5.) Upon such examination, plaintiff argues, it becomes clear that Congress intended SLUSA to apply to actions brought against publicly traded companies, their accounting firms and directors, not defendants like Knight, which is not an issuer of publicly traded securities. (Pl.Br. at 5–8; Pl.Rep.Br. at 5–6.) Defendant argues that the language of the removal provision is clear, there is no need to examine the legislative history, but even upon review of the legislative history it is clear that Congress did not intend to limit SLUSA to actions against corporate issuers. (Def.Br. at 25–27.) Additionally, plaintiff argues that because he has not alleged any securities fraud claims against Knight, SLUSA is inapplicable. (Pl.Rep. Br. at 8–9.)

The legislative history of SLUSA shows that Congress sought to establish federal courts as "the exclusive venue for most securities class action lawsuits" involving nationally traded securities. H.R.Conf. Rep. No. 803, 105th Cong., 2d Sess. at 13 (1998) ("House Report"). The House Report noted that one year after the passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which erected protections against "strike suits" in federal courts, the Securities and Exchange Commission reported a significant shift of securities fraud cases from federal to state court. *Id.* at 14. Apparently, PSLRA drove many would-be plaintiffs to file their claims in state court, based on state law, in order to avoid the heightened pleading requirements of PSLRA. *In re Lutheran Brotherhood,* 105 F.Supp.2d at 1039. According to the House Report, the purpose of SLUSA was to "prevent plaintiffs from seeking to evade the protections that Federal law provides against abusive litigation by filing suit in State, rather than Federal, court." House Report at 13.

According to the House Report, the purpose of "strike suits" was to "extract a sizable settlement from companies that are forced to settle, regardless of the lack of merits of the suit, simply to avoid the potentially bankrupting expense of litigating." *Id.* Therefore, "in order to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate" federal objectives, Congress found it "appropriate to enact national standards for securities class action lawsuits involving nationally traded securities." *Id.* at 2. It appears that Congress's intention when it enacted SLUSA, with the exception of certain "preserved actions," was to completely preempt state securities class actions alleging fraud or manipulation relating to covered securities.

### Must defendant be an "issuer" or affiliate of an issuer for SLUSA to apply?

Plaintiff argues that this action "is not the type of action intended for regulation [under PSLRA or SLUSA] because plaintiff was not an investor in the securities issued by defendants, nor did the fraud complained of arise out of the acts and omissions of a company in which plaintiff was an investor." (Pl.Br. at 8.)

Neither the language of the statutes nor their legislative history indicate that they were intended to apply only to situations in which issuers of securities are accused of misrepresentation. Adopting plaintiff's proffered limitation on SLUSA's reach would frustrate Congress's clear intent to make federal courts the "exclusive venue" for securities class actions because it would preserve all state law securities claims alleging fraud "in connection with the purchase or sale of a covered security" by anyone other than a securities issuer or affiliate thereof: brokers, dealers, clearinghouses, and others. There is no indication that Congress intended to limit SLUSA in that manner or to that extent. Moreover, Congress explicitly provided that certain types of actions—none of which apply here—are exempt from SLU-SA. 15 U.S.C. § 78bb(f)(3). It is logical to conclude that had Congress intended to limit SLUSA's application in the manner propounded by plaintiff, it would have done so explicitly.

Contrary to plaintiff's contention, it does not necessarily follow that Congress intended SLUSA to apply only in cases involving issuers or their affiliates simply because the majority of cases to which SLUSA has been applied involved such situations. Additionally, courts have applied both PSLRA and SLUSA in cases involving non-issuers of securities. In *Abada v. Charles Schwab & Co., Inc.,* 68 F.Supp.2d 1160, 1161 (S.D.Ca.1999), the plaintiff alleged various state law claims concerning Schwab's on-line brokerage account services arising from allegedly false representations that Schwab "would provide fast, high quality executions" of trades. As in this case, the plaintiff argued that SLUSA was intended to apply only to securities issuers or their affiliates and because Schwab was neither, SLUSA did not apply. *See id.* at 1168. The court considered the language and legislative history of SLUSA and found, as found here, no indication that SLUSA was intended to apply only to issuers or their affiliates. *Id.* The court observed that it could not have been Congress's intent to preserve all state securities fraud claims against anyone that was not an issuer or its affiliate, especially in light of the "wide-sweeping limitation" of SLUSA. *Id.* Moreover, because Congress explicitly provided for exceptions to SLUSA, Congress could not have intended to limit the statute's applicability to issuers or their affiliates by remaining silent on the issue. *Id.; see also Ellison v. American Image Motor Co.,* 36 F.Supp.2d 628, 642 (S.D.N.Y.1999) (applying PSLRA to broker/dealers and "market maker"); *Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 135 F.3d 266, 269 (3d Cir.1998) (en banc) (applying § 10 of 1934 Securities Act and Rule 10b–5 to broker/dealer and "market maker").

### Has plaintiff pleaded securities fraud claims?

■ Plaintiff argues that four of his five causes of action are not claims that may be adjudicated under the federal securities laws. (Pl.Rep.Br. at 8–9.) With respect to the fifth claim, pled pursuant to the New Jersey Consumer Fraud statute, plaintiff contends the issue is whether the complaint alleges intent to defraud. In essence, plaintiff argues that since the majority of his claims against Knight are not securities fraud claims, SLUSA does not govern.

Plaintiff refers to *Burns v. Prudential Securities*, 116 F.Supp.2d 917, 922 (N.D.Ohio 2000), for its analysis of whether the plaintiffs alleged that the defendant "either 'misrepresented or omitted a material fact' or 'used or employed any manipulative or deceptive device or other contrivance'" as required by SLUSA.[2] (Pl.Rep. Br. at 7.) The *Burns* court concluded that removal to federal court was improper because the complaint did not allege "specific facts giving rise to a strong inference" that the defendant "acted deceitfully" as required by the securities laws and SLUSA. *Id.* at 926. Plaintiff states that "[w]hat apparently was missing from the allegation in the *Burns* complaint were allegations demonstrating intent to defraud" and argues that the complaint in the instant action is similarly deficient. (Pl.Rep.Br. at 7–9.)

Plaintiff is correct that the *Burns* court considered whether the complaint satisfied Fed.R.Civ.P. 9(b) and the heightened pleading requirements of PSLRA requiring that allegations of fraud be pled with enough specificity to give rise to a strong inference that the defendant acted with the required state of mind: "intent to deceive, manipulate or defraud." *See Burns*, 116 F.Supp.2d 917, 922, 923 (*quoting Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194, 96 S.Ct. 1375, 47 L.Ed.2d .668 (1976)). The

*Burns* court concluded that the plaintiffs had not alleged facts suggesting that the defendant's conduct involved any "element of deception." *Id.* at 924. Specifically, the court noted that the plaintiffs had not alleged that the defendant "had anything to gain financially, that he was churning plaintiffs' accounts, or that he intended to benefit by contravening the terms of the brokerage contracts." *Id.* Further, the court stated,

> [T]his case involves an allegation of one instance of unauthorized trading. While this may sustain conversion, breach of contract, breach of fiduciary duty, or negligence claims, it does not suggest, much less strongly so as is mandated by PSLRA, that [the defendant] meant to defraud plaintiffs by liquidating their accounts. Only additional "facts giving rise to a strong inference" that (the defendant) acted with intent to defraud could support a tenable securities fraud claim.

*Id.*

Unlike the facts alleged in *Burns*, the facts alleged in this case give "rise to a strong inference" that Knight acted with intent to defraud. Specifically, the complaint alleges that Knight falsely stated in various public filings that it guaranteed to execute retail customers' trades at the best available market price, yet Knight traded "in advance of such retail customers," thus giving Knight "an informational advantage amounting to exclusive intelligence on which it can trade for its own profit." (Compl.¶¶ 11–20.) Plaintiff asserts that Knight "concealed, suppressed and omitted the fact that it was executing" trades in a manner that caused customers "to pay artificially higher prices than they would have otherwise paid. Defendant failed to disclose[ ] this information with the intent that Plaintiff and Class members rely upon such concealment, suppression or omission." (Compl.¶ 44.) Unlike *Burns*, which

---

**2.** Incidentally, the defendant in *Burns* was a broker, not a securities issuer or affiliate thereof. There is no discussion in that opinion concerning whether SLUSA applies to non-issuers of securities.

involved "one instance of unauthorized trading," 116 F.Supp.2d at 924, the complaint in this case alleges a four-year period in which Knight made false and misleading statements upon which it intended that plaintiff rely and engaged in a pattern and practice of trading in advance of its retail customers and the selling or buying at a profit at the expense of its customers. (Compl.¶¶ 13–15, 19, 20, 24, 37, 42–44.)

Plaintiff dissects his individual causes of action in an attempt to argue that they are state law claims "not capable of being adjudicated under the federal securities laws." (Pl.Rep.Br. at 8.) Additionally, plaintiff asserts that *Burns* cites cases for the proposition that many "courts have not found securities laws violations 'based on allegations of conversion, breach of contract, breach of fiduciary duty and negligence.' " (Pl.Rep.Br. at 8, n. 3.) However, unlike *Burns* and the cases cited in footnote 2 of that opinion, allegations of Knight's pattern and practice of misrepresentation and intent to deceive, manipulate, or defraud pervade the complaint and are incorporated by reference in each cause of action in the complaint.[3] *See Abada*, 68 F.Supp.2d at 1166 ("Plaintiff's characterization of his claims are not at issue. The issue, rather, is the substance of the claims contained in the complaint, not the particular semblance in which it is cloaked."). It must be concluded, therefore, that plaintiff has pleaded what are, in essence, securities fraud claims, even though they were framed as state law claims, and that SLUSA governs.

### Conclusion

For the reasons set forth above, removal of the case to federal district court was proper. Plaintiff will have twenty days to file an amended complaint that conforms with PSLRA. If plaintiff fails to do so, the matter will be dismissed pursuant to SLU-SA. An appropriate order shall be entered.

---

**3.** The only cause of action that does not "repeat and reallege" the foregoing allegations is the first cause of action for breach of contract. That cause of action does, however, allege "a pattern and practice of trading ... at unfair prices, obtaining an unfair markup and/or a secret profit." (Compl.¶ 24.) That allegation is sufficient to give rise to a strong inference that Knight acted with intent to deceive, manipulate, or defraud.